IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA JIMENEZ, LOURDES JIMENEZ, and JOSE JIMENEZ, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 06 C 5943 |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER
ON MOTIONS IN LIMINE**

The Court has before it several motions in limine filed by the parties in anticipation of trial. The Court will address each in turn.

**I.      Standard of Review**

District courts have broad discretion in ruling on evidentiary questions presented before trial on motions in limine. *Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002). The power to exclude evidence in limine derives from this Court's authority to manage trials. *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). Evidence should be excluded in limine only where it is clearly inadmissible on all potential grounds. *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.,* 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence in limine has the burden of establishing that the evidence is not admissible for any purpose. *Id*. Denial of a motion in limine does not mean that all evidence contemplated by the motion will be admitted at trial. *Id*. at 1401. Rather, denial simply means the court cannot

determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989); *Broom v. Bozell, Jacobs, Kenyon & Eckhardt,* 867 F. Supp. 686, 690-91 (N.D. Ill. 1994). Accordingly, this Court will entertain objections as they arise at trial, even if the proffer falls within the scope of a denied motion in limine. See also *Robenhorst v. Dematic Corp.*, 2008 WL 1766525, at *2 (N.D. Ill. April 14, 2008).

## II. Discussion

### A. Plaintiffs' motion in limine regarding immigration status

Plaintiffs filed a motion in limine [57] seeking to bar any testimony concerning the immigration status of any of the Plaintiffs as irrelevant to any matter at issue, including Defendant's liability and the scope of injuries sustained by any of the Plaintiffs. The Court fails to see how Plaintiffs' immigration status can bear on any of those issues. Moreover, it appears, from Defendant's response brief as well as from defense counsel's comments at the final pre-trial conference on July 30, 2008, that Defendant proposes to use such testimony only to rebut certain proposed opinion testimony of one of Plaintiffs' witnesses, Dr. Hector Machabanski, concerning what Plaintiffs told him about how the accident has affected their lives. As explained below, the Court will exclude the testimony of Dr. Machabanski to the extent that his testimony is offered to "tell [Plaintiffs'] story" to the Court in regard to how their lives have been affected by the incident that gave rise to this lawsuit; Plaintiffs themselves are far better situated to provide that kind of testimony. In the absence of any such testimony from Dr. Machabanski, the proffered justification for Defendant's proposed testimony concerning Plaintiffs' immigration status appears to have been largely, if not entirely, eliminated. See Fed. R. Evid. 402.

Accordingly, the Court rules that all witnesses and the parties' counsel shall refrain from mentioning Plaintiffs' present or past immigration or citizenship status at trial on the ground that it is irrelevant to any issue in this case. To the extent that Defendant believes that the circumstances of Plaintiffs' lives other than the accident involving the postal truck are relevant to Plaintiffs' mental state, they may explore those circumstances without making reference to Plaintiffs' immigration or citizenship status.

### B. Plaintiffs' motion in limine regarding pre-existing conditions

Plaintiffs have moved [58] to bar Defendant from presenting any evidence, unless supported by competent medical testimony, that any of Plaintiffs' injuries were caused by anything other than being struck by Ms. Hankerson's car. In support of their motion, Plaintiffs cite Illinois case law that stands for the proposition that absent a causal link between a pre-existing condition and an injury at issue, which in most instances must be established through the use of expert testimony, evidence of a pre-existing condition is inadmissible.

In their brief in opposition, and again at the final pre-trial conference, Defendant contended that Plaintiffs' motion regarding pre-existing conditions misunderstood Defendant's position and intentions. As clarified during the final pre-trial conference (Tr. at 7-11), the parties anticipate that the issue of pre-existing conditions will be injected into the case through the testimony of Plaintiff's treating physicians that the inactivity caused by the accident exacerbated the pre-existing conditions (diabetes and hypertension) of one of the Plaintiffs. If that is the extent of testimony concerning pre-existing conditions, Defendant will be permitted to cross-examine the treating physicians on such testimony. See, *e.g.*, *Felber v. London*, 803 N.E.2d 1103, 1107 (Ill. App. 2nd Dist. 2004); see also *Lagestee v. Days Inn Mgmt. Co.*, 709 N.E.2d 270, 280 (Ill. App. 1st Dist. 1999). The parties have not identified any other anticipated uses of

testimony concerning pre-existing conditions, and the Court notes that Defendant does not have any medical experts on its witness list. Thus, the motion to exclude will be denied without prejudice. Should any issues concerning pre-existing conditions arise during trial other than those identified above, Plaintiffs are free to renew their motion.[1]

C. **Defendant's motion in limine to bar Plaintiffs' physicians from testifying as experts**

Defendant seeks to bar Plaintiffs' treating physicians from testifying as expert witnesses [56], arguing that Plaintiffs failure to comply with Federal Rule of Civil Procedure 26(a)(2) deprived Defendant of the opportunity to adequately prepare for trial. In response to Defendant's motion, Plaintiffs acknowledge that they did not disclose their treating physicians as experts or provide expert reports as required by Rule 26(a)(2). However, Plaintiffs point out that the sanction of exclusion is not mandatory and ask that the Court consider the lesser sanction of limiting the treating physicians to the opinions expressed in letters that were disclosed to Defendants in an administrative proceeding that predated this court action. In support of their request, Plaintiffs rely on a case from the Central District of Illinois, *Dereak v. Don Mattox Trucking, LLC*, 2007 WL 3231417 (C.D. Ill. Oct. 30, 2007), which Plaintiffs contend arose in similar circumstances.

After reviewing all of the briefing, including Defendant's reply brief, and studying the *Dereak* opinion, the Court concludes that the circumstances here do not present nearly as compelling a case for departing from the ordinary rule in the Seventh Circuit that, absent a showing of substantial justification or harmlessness, the consequence of failing to properly disclose experts under Rule 26 is exclusion. See *Musser v. Gentiva Health Servs.*, 356 F.3d 751,

---

[1] As explained below, because Plaintiffs failed to identify their treating physicians as experts (or, more precisely, Rule 702 opinion witnesses), those physicians will not be permitted to offer Rule 702 opinion testimony. That ruling may affect the extent to which *Plaintiffs* may establish the existence of a pre-existing condition that may have been exacerbated by the accident.

4

757-58 (7th Cir. 2004) ("even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony"). *Musser* supports Defendant's contention that compliance with Rule 26 "is not easily excused," and Plaintiffs have not shown that this case is closely analogous to *Dereak*, where the court did have a reasonable basis for imposing a lesser penalty for a party's failure to strictly comply with the Rule. In *Dereak*, the case began in state court, and while the case remained pending in state court the plaintiff provided sufficient notice under the applicable state court rules that certain medical witnesses would provide expert testimony. After the case was removed, the federal court refused to bar those witnesses because (i) the parties in *Dereak* agreed that the answers to the state court interrogatories did not need to be duplicated in the federal Rule 26 process, and (ii) the defendant in *Dereak* was on notice of the probable expert testimony and could have deposed the witnesses accordingly.

Conversely, this case began in federal court and Rule 26 always has applied. Although Plaintiffs claim that the parties agreed orally that prior disclosures through the administrative process would constitute their Rule 26 disclosure – a claim that Defendant disputes – Plaintiffs have not attempted to explain the procedures that apply in an administrative action. Accordingly, the Court has no way of knowing what steps Plaintiffs took to reveal their treating physicians as experts at the administrative phase. Nor is there any basis for overlooking the absence of strict compliance with the federal rules because the rules under which the parties previously were operating ensured substantial compliance, as appears to have been the case in *Dereak*.

What the Court can ascertain from the record is that at no point in federal court has Defendant been given notice that Plaintiffs would attempt to elicit Rule 702 opinion testimony from any of the numerous physicians who have treated Plaintiffs. During discovery, Defendant

served interrogatories and requests to produce on Plaintiffs. Interrogatory No. 4 asked Plaintiffs to list all witnesses, including expert witnesses, and Plaintiffs responded by stating that they would supplement their witness list during the period allowed for the disclosure of experts. Plaintiffs later informed Defendant that they intended to call Gary Skoog, Pamela Chwala, and Hector Machabanski as experts, and Defendant deposed these individuals and retained rebuttal experts for Skoog and Chwala. However, despite repeated extensions of the expert disclosure deadline, Plaintiffs never supplemented their answer to Interrogatory No. 4 to identify Dr. Silver or Dr. Treister as experts.

Rule 26(a)(2) is designed so that a party does not have to assume that each of the opposing party's treating physicians might be called as expert witnesses at trial. See *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004). Exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless the non-disclosure was justified or harmless. *Id*. at 758. Because the Court does not find this case to be closely analogous to *Dereak* and cannot find that Defendant would not suffer substantial prejudice from the introduction of expert testimony that was not properly disclosed, the Court respectfully declines Plaintiffs' suggestion to follow *Dereak* and instead grants Defendant's motion in limine to bar Plaintiffs' treating physicians from offering at trial testimony that falls within the scope of Rule 702. See *Musser*, 356 F.3d at 757 n.2 ("a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation"). Accordingly, Plaintiffs' treating physicians will be limited to testimony within their personal knowledge concerning initial observations and follow-up diagnosis and treatment, as reflected in medical records – in short, testimony that

reflects their "involvement in the facts of the case." *Id*. at 757; see also *Griffith v. Northeast Illinois Regional Commuter Railroad Corp.*, 233 F.R.D. 513, 518-19 (N.D. Ill. 2006). As Defendant stated in its reply brief, it "does not object to the testimony of the treating physicians in regard to the facts of the medical records" and in fact has "stipulate[d] to the authenticity of the medical records." Reply at 4-5. However, the treating physicians may not offer Rule 702 testimony – for example, on matters such as causation, permanency, or future disability. See *Griffith*, 233 F.R.D. at 519.

> D. **Defendant's motions in limine to exclude Plaintiffs' disclosed Rule 702 opinion witnesses**

Defendant has filed two motions [52 and 55] seeking to exclude the testimony of Plaintiffs' disclosed Rule 702 opinion witnesses.[2] As an initial matter, the Court recognizes the Seventh Circuit's teaching about the critical distinction between a jury trial and a bench trial with respect to the Rule 702 inquiry:

> Where the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing the testimony is lessened. See *United States v. Brown,* 415 F.3d 1257, 1268-69 (11th Cir. 2005). That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

*In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); see also *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself"). Under this sensible approach, the judge in a

---

[2] Defendant also filed a third motion in limine [51] to exclude Pamela Jo Chwala's testimony regarding a life care plan for Plaintiff Zenaida Mendoza. However, on August 14, 2008, the parties notified the Court that they have settled Ms. Mendoza's claims and that Defendant withdraws it motion in limine as to Chwala.

7

bench trial may choose to allow the presentation of borderline testimony, subject the testimony to the rigors of cross-examination, and decide later whether the testimony is entitled to some consideration or whether it should be excluded as irrelevant, unreliable, or both.

> 1. **Defendant's motion in limine to exclude the testimony and report of Gary Skoog, Ph.D. [55]**

Plaintiffs offer the testimony of Gary Skoog, Ph.D., to evaluate the economic loss incurred by Plaintiff Maria Jimenez as a result of injuries sustained in the accident. Defendant points out a number of criticisms of Skoog's methods, most specifically that his reliance on subjective testimony and speculation without regard to Plaintiffs' objective medical and financial history is not characteristic of the standard practice of economics. Those methods can be tested by cross-examination and Skoog's opinions can be disregarded by the Court if they are not well supported, credible, or based on reasonable methods and logical reasoning. For example, the dispute between Plaintiffs and Defendant concerning Skoog's reliance on a lifespan of 110 years for some of his calculations can be explored at trial, with the Court able to reserve ruling on admissibility until during or after the trial because this case will not be tried to a jury. Therefore, at this stage, the Court denies Defendant's motion to exclude the testimony of Gary Skoog, Ph.D.

> 2. **Defendant's motion in limine to exclude Plaintiffs' Witness Hector Machabanski, Ph.D. [52]**

Plaintiffs offer Hector Machabanski, Ph.D., a clinical psychologist, as an expert who will testify as to the effect of Plaintiffs' injuries on their lives and their emotional health. Defendant contends that Machabanski should not be permitted to speak on behalf of Plaintiffs because they are able to speak for themselves at trial and because his testimony is based solely on Plaintiffs' subjective statements.

At this stage, the Court fails to see how any testimony from Dr. Machabanski that simply summarizes his conversations with Plaintiffs would be helpful to the trier of fact, as it must be to be admissible under Rule 702.  See *Walker v. Soo Line Railroad Co.*, 208 F.3d 581, 586 (7th Cir. 2000).  Plaintiffs are able to testify for themselves during trial, and the Court will be in a position to hear their testimony (even if through an interpreter) and to observe their demeanor and credibility unfiltered through a paid expert witness.  In the Court's view, the testimony of Plaintiffs would be much more helpful than listening to someone else recount their daily activities, feelings, and descriptions of injuries and pain.  See, *e.g.*, *Hammond v. Coleman Co.*, 61 F. Supp. 2d 533, 539 (S.D. Miss. 1999) ("Dr. Rosenhan's repetition of Plaintiff's testimony is not helpful to the jury.  The Plaintiff himself can testify to what happened to him.").

At the final pre-trial conference, counsel for Plaintiffs stressed that "even though a lot of Machabanski's report was things that the plaintiffs told him, he also did diagnose them with depression and Maria Jimenez with post-traumatic stress syndrome."  Tr. at 5.  Based on the briefing on that aspect of Dr. Machabanski's proposed testimony, the Court is skeptical of Machabanski's opinions because he did not perform any psychological tests or tests demonstrating chemical indicators of mental illness when diagnosing.  Nor is there any indication that Dr. Machabanski consulted any of Plaintiffs' medical records.  Rather, he appears to have relied exclusively on self-reports by Plaintiffs.  However, because this is a bench trial and because Plaintiffs have represented that they anticipate that their direct examination of Dr. Machabanski will consume only thirty minutes of trial time, the Court will allow the proffered testimony of Dr. Machabanski's diagnoses, along with cross-examination of that testimony, "subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."  *In re Salem*, 465 F.3d at 777.

### E. Defendant's motion in limine to exclude the testimony of family members and medical providers as cumulative

Defendant has moved to exclude [53] the testimony of family members, first responders, and medical providers listed on Plaintiffs' witness list as being cumulative. Defendant notes that it has agreed to stipulate to the authenticity of the entire medical records file and documents from Plaintiffs' medical providers, obviating the need to call certain medical witnesses. Defendant also contends that the testimony of family members as to Plaintiffs' injuries, pain, and suffering will be repetitive of medical records and testimony given by Plaintiffs themselves.

At the final pre-trial conference, the Court asked Plaintiffs to file a revised witness list, which included a description of the scope and subject matter of the proposed testimony for each witness as well as the anticipated length of direct examination of each witness. Plaintiffs provided their revised list, which included twenty-two witnesses that they intend to call. However, Plaintiffs indicated that two of the witnesses would be withdrawn if Defendant stipulated to a paramedic report (Paramedic Michelle Polanco) and nursing home records (Fernando Ojea, M.D., of Woodbridge Nursing Pavilion). Additionally, six others are listed as "May Call." The total time estimated for all of the Plaintiffs' witnesses to testify is 12.75 hours, and the total time estimated without the "May Call" witnesses is 10.25. Although the allotted time does not include cross-examination, the Court finds this estimation to be reasonable and cannot conclude at this time that any of the witnesses identified will provide cumulative testimony or will unduly lengthen the trial. Furthermore, as Plaintiffs acknowledged in their brief, if testimony becomes cumulative, the Court may impose limits and direct counsel to move the witness along. Therefore, based on Plaintiffs' revised witness list and the reasonable time estimations proposed by Plaintiffs, the Court denies Defendant's motion in limine to exclude the testimony of family members and medical providers as cumulative.

### F. Defendant's motion in limine to exclude "Day in the Life" video

Defendant has moved to exclude [54] from trial a video containing footage of Maria Jimenez walking down the stairs of her former house as well as taped statements from Zenaida Mendoza, Maria Jimenez, and Jose Jimenez. The statements on the video are in Spanish and are not translated. Defendant seeks to exclude the video on the grounds that it is hearsay under Federal Rule of Evidence 802 and because it creates dangers of unfair prejudice.

Having reviewed the video, the Court is not persuaded that the video will be particularly helpful in assessing Plaintiff Jimenez' injuries. However, the Court will admit into evidence (and allow to be used at trial) those portions of the video that depict Maria Jimenez in "ordinary day-to-day situations," because those situations are of the greatest probative value. *Bannister v. Town of Noble*, 812 F.2d 1265, 1269 (10th Cir. 1987). The Court will exclude the conversations with attorneys and statements; any testimony of that nature that Plaintiffs wish to elicit is more properly presented through live testimony at trial. To the extent necessary, the Court will provide specific guidance on what parts of the video may be shown and discussed on the first day of trial.

## III. Conclusion

For the reasons stated above, the Court grants Plaintiffs' motion in limine regarding immigration and citizenship status [57] and denies without prejudice Plaintiffs' motion in limine regarding pre-existing conditions [58]. The Court grants Defendant's motion in limine regarding Rule 702 opinion testimony of treating physicians [56], denies Defendant's motions in limine on Gary Skoog, Ph.D. [55] and cumulative witnesses [53], and grants in part and denies in part Defendant's motions in limine on Hector Machabanski, Ph.D. [52] and the "day in the life" video [54]. Defendant's motion in limine as to Pamela Jo Chwala, R.N. [51] is withdrawn.

Dated: August 14, 2008

_____
Robert M. Dow, Jr.
United States District Judge